

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC.<br>f/k/a Days Inns of America, Inc.<br>1 Sylvan Way<br>Parsippany, New Jersey 07054,<br><br>    Plaintiff,<br><br>v.<br><br>ALIBABA CHARCHOR, INC.<br>c/o Mukesh Patel<br>1051 North Canfield-Niles Road<br>Youngstown, Ohio 44515,<br><br>    and<br><br>BHARAT PATEL<br>18 Tremore Way<br>Holland, Ohio 43528,<br><br>    and<br><br>MUKESH PATEL<br>1051 North Canfield-Niles Road<br>Youngstown, Ohio 44515,<br><br>    Defendants. | CASE NO. 03CV0694<br><br>JUDGE **JUDGE ECONOMUS**<br><br>MAG. **JUDGE GALLAS**<br><br>**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Days Inns Worldwide, Inc., f/k/a Days Inns of America, Inc., for its Complaint against Defendants Alibaba Charchor, Inc., Bharat Patel and Mukesh Patel, states and alleges as follows:

## PARTIES JURISDICTION AND VENUE

1. Plaintiff Days Inns Worldwide, Inc., formerly known as Days Inns of America, Inc. ("DIW") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.

2. Defendant Alibaba Charchor, Inc. ("Alibaba"), on information and belief, is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 1051 North Canfield-Niles Road, Youngstown, Ohio 44515.

3. Defendant Bharat Patel, upon information and belief, is a principal shareholder of Alibaba and a citizen of the State of Ohio, residing at 18 Tremore Way, Holland, Ohio 43528.

4. Defendant Mukesh Patel, upon information and belief, is a principal shareholder of Alibaba and a citizen of the State of Ohio.

5. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

## ALLEGATIONS COMMON TO ALL CLAIMS

### The Days Marks

7. DIW is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

8. DIW has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Days Marks"), as well as the distinctive Days Inns®

2

CLE - 778242.2

System, which provides services to franchisees under the Days name, including a centralized reservation system, advertising, publicity, and training services.

9. DIW or its predecessors have continuously used each of the Days Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

10. DIW has given notice to the public of the registration of the Days Marks as provided in 15 U.S.C. § 1111.

11. DIW uses or has used the words "Days Inn," among others, as abbreviations of its brand name.

12. Through its franchise system, DIW markets, promotes, and provides services to its guest lodging franchisees throughout the United States. In order to identify the origin of their guest lodging services, DIW allows its franchisees to utilize the Days Marks and to promote the Days Inn brand name.

13. DIW has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize Days Marks as distinctly designating DIW guest lodging services as originating with DIW.

14. The value of the goodwill developed in the Days Marks does not admit of precise monetary calculation, but because DIW is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of DIW's goodwill exceeds hundreds of millions of dollars.

15. The Days Marks are indisputably among the most famous in the United States.

## The Agreements Between the Parties

16. On or about January 3, 2001, DIW entered into a license agreement (the "License Agreement") with Alibaba for the operation of a 122-room guest lodging facility located at 1051 North Canfield-Niles Road, Youngstown, Ohio 44515, Site No. 13560 (the "Facility"). A true copy of the License Agreement is attached hereto as Exhibit A.

17. On or about November 20, 2001, Alibaba advised DIW that the Facility would operate only 120 rooms.

18. Pursuant to section 5 of the License Agreement, Alibaba was obligated to operate a Days Inn® guest lodging facility for a 15-year term, during which time Alibaba was permitted to use the Days Marks in association with the operation and use of the Facility as part of DIW's franchise system.

19. Pursuant to section 3 of the License Agreement, Alibaba was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in or attached to the License Agreement, and to achieve and maintain certain scores on periodic quality assurance ("QA") inspections conducted by DIW.

20. Pursuant to section 3.4 of the License Agreement, Alibaba was required to operate the Facility in compliance with DIW's "System Standards," as defined in the License Agreement, including DIW's quality assurance requirements.

21. Pursuant to section 4.8 of the License Agreement, DIW had the right to conduct unlimited quality assurance inspections of the Facility (and unlimited reinspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance

4

CLE - 778242.2

with DIW's quality assurance requirements.

22. Pursuant to section 7 and Schedule C of the License Agreement, Alibaba was required to make certain periodic payments to DIW for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

23. Pursuant to section 3.8 of the License Agreement, Alibaba was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Alibaba at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

24. Pursuant to Section 3.8 of the License Agreement, Alibaba agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to 3.9 and 4.8 of the License Agreement, Alibaba agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts.

25. Pursuant to section 11.2 of the License Agreement, DIW could terminate the License Agreement, with notice to Alibaba, for various reasons, including Alibaba's (a) failure to pay any amount due DIW under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the License Agreement, and (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

26. Pursuant to section 12.1 of the License Agreement, Alibaba agreed that, in the

event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the License Agreement.

27. Section 13 of the License Agreement specified Alibaba's obligations in the event of a termination of the License Agreement, including its obligation to immediately cease using all of the Days Marks.

28. Pursuant to section 17.4 of the License Agreement, Alibaba agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

29. Effective as of the date of the License Agreement, Bharat Patel and Mukesh Patel (the "Guarantors") each provided DIW with a Guaranty of Alibaba's obligations under the License Agreement ("Guaranty"). A true copy of the Guaranty is attached hereto as Exhibit B.

30. Pursuant to the terms of the Guaranty, Bharat Patel and Mukesh Patel each agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [License] Agreement."

31. Pursuant to the terms of the Guaranty, Bharat Patel and Mukesh Patel each agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or License Agreement.

## The Defendants' Defaults & Termination

32. Beginning in early 2002, Alibaba repeatedly failed to operate the Facility in accordance with DIW's System Standards, in breach of its obligations under the License

Agreement.

33. On January 15, 2002, DIW conducted a QA inspection of the Facility. By letter dated January 25, 2002, a true copy of which is attached hereto as Exhibit C, DIW advised Alibaba that (a) the Facility received a failing score in the QA inspection and, as a result, Alibaba was in default of its obligations under the License Agreement, (b) pursuant to the License Agreement, it had 30 days within which to cure the QA default, and (c) if a minimum score of 425 and a passing Food and Beverage score were not achieved upon reinspection, then the reservation service to the Facility would be subject to suspension and the License Agreement would also be subject to termination.

34. On July 16, 2002, DIW conducted another QA inspection of the Facility. By letter dated August 27, 2002, a true copy of which is attached hereto as Exhibit D, DIW advised Alibaba that (a) the Facility received a second consecutive failing score in the QA inspection and, as a result, Alibaba remained in default of its obligations under the License Agreement, (b) that unless the Facility received a passing QA score of 370 by November 27, 2002, DIW would terminate the License Agreement effective December 2, 2002, and (c) that unless DIW opted to extend the termination date, the Facility would be removed from the central reservation system as of December 2, 2002.

35. On November 27, 2002, DIW conducted another QA inspection of the Facility. By letter dated December 4, 2002, a true copy of which is attached hereto as Exhibit E, DIW provided Alibaba with formal notice of its defaults and termination of the License Agreement for failing the third consecutive time to satisfy QA standards as required by the License Agreement. DIW also informed Alibaba that the termination of the License Agreement would be effective December 4, 2002 and advised Alibaba that (a) it was to immediately discontinue the use of all

7

CLE - 778242.2

trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Days Facility, and to discontinue use of other materials on the premises effectively to distinguish the same from its former appearance as a Days System Facility, (b) all items bearing the Days Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Days Inn had to be changed, (d) it was required to pay to DIW liquidated damages as required under the License Agreement, (e) it had to de-identify the Facility within 14 days from the receipt of the notice, and (f) Alibaba was required to pay to DIW outstanding Recurring Fees and other amounts through the date of termination.

36. The termination of the License Agreement precludes Alibaba from any further use of the Days Marks in or around the Facility.

37. The termination of the License Agreement precludes Alibaba from any further use of the Days Marks to induce the traveling public to use the Facility in any way.

38. Since the termination of the License Agreement, Alibaba has continued to use the Days Marks to induce the traveling public to rent guest rooms at the Facility.

39. Since the termination of the License Agreement, Alibaba has used the Days Marks without authorization to rent rooms through, among other things, failure to remove the Days signage.

### FIRST CLAIM FOR RELIEF

#### (Violation of the Lanham Act)

40. DIW repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 39 of the Verified Complaint.

41. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part

that "[a]ny person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant ..."

42. Alibaba marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Days Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

43. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation ... or as to the origin, sponsorship, or approval of ... goods [or] services ... shall be liable in a civil action ..."

44. The acts of Alibaba in marketing, promoting, and renting rooms at the Facility, through and with the Days Marks, constitute:

    (a) a false designation of origin;

    (b) a false and misleading description of fact; and

    (c) a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Alibaba's Facility with DIW, and to cause confusion, or to cause mistake, or

9

deception, to the effect that DIW sponsors or approves of the guest lodging services that Alibaba provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

45. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

46. Alibaba's use of the Days Marks in connection with goods and services at the Facility, after the Days Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Days Marks, and lessened and will continue to lessen the capacity of the Days Marks to identify and distinguish the goods and services of DIW, all in violation of Section 43(c) of the Lanham Act.

47. Alibaba's on going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

48. Alibaba's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on DIW.

49. DIW has no adequate remedy at law.

50. No previous injunctive relief has been awarded with respect to this matter in this or any other case.

CLE - 778242.2

## SECOND CLAIM FOR RELIEF

### (Accounting)

51.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 50 of the Verified Complaint.

52.     Pursuant to sections 3.8 and 4.8 of the License Agreement, Alibaba agreed to allow DIW to examine, audit, and make copies of Alibaba's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

53.     The calculation of the monetary amounts sought by DIW in this action is based on the gross room revenue information supplied to DIW by Alibaba.

54.     The accuracy of this information cannot be confirmed without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Alibaba.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract: Liquidated Damages)

55.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 55 of the Verified Complaint.

56.     On December 4, 2002, DIW terminated the License Agreement.

57.     Section 12.1 of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, Alibaba shall pay liquidated damages to DIW within 30 days of termination.

58.     As a result of the termination of the License Agreement, Alibaba is obligated to pay DIW liquidated damages in the amount of $120,000.00, as calculated pursuant to section

11

12.1 of the License Agreement.

59. Notwithstanding DIW's demand for payment, Alibaba has failed to pay DIW the liquidated damages as required in section 12.1 of the License Agreement.

60. DIW has been damaged by Alibaba's failure to pay liquidated damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract: Actual Damages)

61. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 60 of the Verified Complaint.

62. By virtue of the premature termination of the License Agreement, DIW sustained a loss of future revenue over the remainder of the 15-year term of the License Agreement.

63. If the Court determines that Alibaba is not liable to pay DIW liquidated damages as required by section 12.1 of the License Agreement then, in the alternative, Alibaba is liable to DIW for actual damages for the premature termination of the License Agreement.

64. DIW has been damaged by Alibaba's breach of its obligation to operate as a Days guest lodging facility for the remaining term of the License Agreement.

## FIFTH CLAIM FOR RELIEF

### (Breach of Contract: Recurring Fees)

65. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 64 of the Verified Complaint.

66. Pursuant to section 7 and Schedule C of the License Agreement, Alibaba was obligated to remit Recurring Fees to DIW.

67. Despite its obligation to do so, Alibaba failed to remit certain of the Recurring

12

CLE - 778242.2

Fees due and owing under the License Agreement in the amount of $462.41.

68. Alibaba's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged DIW.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment)

69. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 68 of the Verified Complaint.

70. At the time of the termination of the License Agreement, Alibaba was obligated to pay DIW Recurring Rees.

71. Despite its obligation to do so and despite having received the benefit of the Days Marks, Alibaba failed to pay certain of the Recurring Fees due and owing under the License Agreement.

72. It would be unjust to permit Alibaba to have benefited from its use of the Days Marks without just compensation for DIW.

73. Alibaba has been unjustly enriched to the damage and detriment of DIW.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Guaranty)

74. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 73 of the Verified Complaint.

75. Pursuant to the terms of the Guaranty, Bharat Patel and Mukesh Patel each agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of Alibaba under the

License Agreement.

76. DIW has provided both Bharat Patel and Mukesh Patel with notice of Alibaba's defaults and termination of the License Agreement, and the obligations required of Alibaba under the License Agreement.

77. Despite their obligation to do so, Bharat Patel and Mukesh Patel have failed to make any payments or perform, or cause Alibaba to perform, each obligation required under the License Agreement.

78. Pursuant to the Guaranty, Bharat Patel and Mukesh Patel are liable to DIW for Alibaba's liquidated damages in the amount of $120,000.00, or actual damages in an amount to be determined at trial, Alibaba's Recurring Fees due and owing under the License Agreement, and for those additional Recurring Fees attributable to the period during which Alibaba has misused Days Marks.

## DEMAND FOR JUDGMENT

**WHEREFORE**, DIW demands judgment as follows:

1. That pursuant to 15 U.S.C. §§ 1114, and 1125(a) and (c), the Court grant DIW a temporary restraining order, and preliminary and permanent injunctive relief restraining and enjoining Alibaba, its affiliates, agents, subsidiaries, officers, servants employees, attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Days Marks; and

2. That this Court enter judgment in favor of DIW on its claim for trademark infringement and award compensatory damages, treble damages, and interest; and

14

3. That the Court enter judgment ordering Alibaba to account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Days Marks; and

4. That the Court enter judgment against Alibaba for liquidated damages in the amount of $120,000, together with interest; or alternatively, that the Court enter judgment against Alibaba for actual damages in an amount to be determined at trial, together with interest; and

5. That the Court enter judgment against Alibaba for the Recurring Fees due and owing under the License Agreement, in the amount of $462.41; and

6. That the Court enter judgment against Alibaba for all royalties and other Recurring Fees due and owing under the License Agreement, and all royalties and other Recurring Fees that should be paid to compensate DIW for the period during which Alibaba misused the Days Marks and was thereby unjustly enriched, together with interest; and

7. That the Court enter judgment against Bharat Patel and Mukesh Patel, jointly and severally, for: (a) all liquidated or actual damages and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees and costs of suit; and (b) all profits, royalties and other Recurring Fees that should be paid to compensate DIW for the period during which Alibaba misused the Days Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit; and

8. That the Court award DIW the costs and expenses incurred by DIW, including all reasonable attorneys' fees, in connection with enforcing DIW's rights and remedies under the terms of the License Agreement; and

CLE - 778242.2

9. That the Court grant DIW such other and further relief as the Court deems just and proper.

Respectfully submitted,

Steven A. Goldfarb (0030186)
sagoldfarb@hahnlaw.com
Rose Marie Fiore (0065243)
rmfiore@hahnlaw.com
Eric B. Levasseur (0075353)
eblevasseur@hahnlaw.com

HAHN LOESER & PARKS LLP
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114
Phone: (216) 621-0150
Telefax: (216) 241-2824

Attorneys for Plaintiff
Days Inns Worldwide, Inc.

## **VERIFICATION**

STATE OF NEW JERSEY )
                                 ) ss:
COUNTY OF MORRIS     )

       James D. Darby, of full age, being duly sworn according to law, upon his oath, deposes and says:

       1.     I am Vice President, Franchise Administration, of Days Inns Worldwide, Inc. f/k/a Days Inns of America, Inc. ("DIW"), which is plaintiff in this action.

       2.     I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Complaint are true based on my personal knowledge, the records of DIW or information available through employees of DIW.

_____
JAMES D. DARBY

Sworn and subscribed to before
me this 14 day of April, 2003

_____
NOTARY PUBLIC

**IRENE BORGENICHT**
Notary Public State of New Jersey
My Commission Expires Aug. 24, 2003

16

CLE - 778242.1